### In re ONG LUNG.

(Circuit Court, S. D. New York. October 19, 1903.)

1. CHINESE EXCLUSION—RETURN OF LABORER TO UNITED STATES—EFFECT OF CERTIFICATE.

    Article 2 of the treaty of 1894 between China and the United States, which provides that the general prohibition of the entry of Chinese laborers into this country contained in article 1 "shall not apply to the return to the United States of any registered Chinese laborer who had a lawful wife, child or parent in the United States, or property therein of the value of one thousand dollars or debts of like amount due him and pending settlement," has reference to the condition of the laborer at the time of his return, and it is competent for the appropriate department of the government to adopt a regulation requiring an inquiry into the matter by the immigration officers on the laborer's return, notwithstanding his possession of a collector's certificate, obtained when he left the country, as provided for by the treaty; and the adverse decision of such officers is within the terms of Act Aug. 18, 1894, c. 301, 28 Stat. 390 [U. S. Comp. St. 1901, p. 1303], and conclusive, unless reversed on appeal to the secretary.

Writ of Habeas Corpus to Discharge from Custody of Immigration Officers.

Max J. Kohler, for petitioner.
Henry A. Wise, Asst. U. S. Atty.

LACOMBE, Circuit Judge. The brief submitted by the district attorney contains the following statement of facts, which are not disputed:

    "The petitioner, a registered Chinese laborer, desiring to make a visit to China, made application to the appropriate government officer at the port of

---

¶ 1. Citizenship of Chinese, see note to Gee Fook Sing v. United States, 1 C. C. A. 212; Lee Sing Far v. United States, 35 C. C. A. 332.

Malone for what is known as a 'return certificate,' and in compliance with article 2 of the treaty of 1894 between the United States and China, and sections 5 to 7, inclusive, of the act of September 13, 1888 (chapter 1015, 25 Stat. 477 [U. S. Comp. St. 1901, pp. 1314, 1315]), as re-enacted by the act of April 29, 1902 (chapter 641, 32 Stat. 176 [U. S. Comp. St. Supp. 1903, p. 188]), he executed and delivered to the said government officer a statement purporting to show that he was then, to wit, September 2, 1902, possessed of property within the United States, and debts due him pending settlement, of upwards of $1,000. Thereafter he received from said government officer what is known as a 'return certificate,' and on or about September 29, 1902, departed for China. Thereafter, and on or about August 11, 1904, he returned to the port of Malone, the port from which he had departed, and sought to re-enter, and was then examined by F. W. Berkshire, the chief officer in charge of the enforcement of the Chinese exclusion laws for the state of New York. The petitioner then presented, as evidence of his right to re-enter, the statement verified September 2, 1902, and which statement contained the claim that the petitioner was possessed of property and debts unsettled in the United States in excess of $1,000; and thereupon said Berkshire claiming the right to examine said petitioner, and, claiming that it was incumbent upon said petitioner to show at the time of his application to re-enter that he was possessed of property and debts due and unsettled in excess of $1,000 in the United States, sought to examine the petitioner, whereupon the petitioner stood mute, and declined to answer various questions propounded to him. Whereupon said Berkshire decided that the petitioner had not proved that the necessary condition entitling him to re-enter existed, and thereupon denied him the right to re-enter. From this decision, the petitioner, pursuant to rule 8 of the Chinese regulations, approved July 27, 1903, appealed to the Secretary of Commerce and Labor from the decision of Berkshire, and said appeal was decided adversely to the petitioner, and he now seeks by writ of habeas corpus to review the action of said Berkshire, as approved by the said Secretary of Commerce and Labor."

The sundry civil appropriation act of August 18, 1894, contains the following:

"In every case where an alien is excluded from admission into the United States under any law or treaty now existing or hereafter made, the decision of the appropriate immigration or customs officers, if adverse to the admission of such alien, shall be final, unless reversed on appeal to the Secretary of the Treasury." Chapter 301, 28 Stat. 390 [U. S. Comp. St. 1901, p. 1303].

This clause has been many times considered by the courts, and has been repeatedly construed in conformity with its plainly expressed intention. The petitioner's counsel does not question the conclusions in any of these cases, but contends that they do not apply here, because, as he asserts, the "decision" excluding Ong Lung was not made in an investigation "under any law or treaty," and because, as he further asserts, such decision was not made in the free exercise of the judgment of the officer making it. By Act Feb. 14, 1903, c. 552, § 7, 32 Stat. 828 [U. S. Comp. St. Supp. 1903, p. 46], the duties that under the exclusion acts had previously devolved upon the Secretary of the Treasury and his subordinates were transferred to the newly created Department of Commerce, and that department, under authority conferred by section 2 of the act of April 29, 1902 (32 Stat. 176 [U. S. Comp. St. Supp. 1903, p. 189]), has recently promulgated regulations under which the immigration officials make an investigation in order to determine whether, when a returning Chinese laborer applies for readmission, the conditions recited in the

treaty, or one of them, exist.    The first two articles of the treaty of 1894 are as follows:

"I. The high contracting parties agree that for a period of ten years, beginning with the date of the exchange of the ratifications of this convention, the coming, except under the conditions hereinafter specified, of Chinese laborers to the United States shall be absolutely prohibited.

"II. The preceding article shall not apply to the return to the United States of any registered Chinese laborer who has a lawful wife, child or parent in the United States, or property therein of the value of one thousand dollars, or debts of like amount due him and pending settlement. Nevertheless every such Chinese laborer shall, before leaving the United States, deposit, as a condition of his return, with the collector of customs of the district from which he departs, a full description in writing of his family, or property, or debts, as aforesaid, and shall be furnished by said collector with such certificate of his right to return under this treaty as the laws of the United States may now or hereafter prescribe and not inconsistent with the provisions of this treaty; and should the written description aforesaid be proved to be false, the right of return thereunder, or of continued residence after return, shall in each case be forfeited. And such right of return to the United States shall be exercised within one year from the date of leaving the United States; but such right of return to the United States may be extended for an additional period, not to exceed one year, in cases where by reason of sickness or other cause of disability beyond his control, such Chinese laborer shall be rendered unable sooner to return—which facts shall be fully reported to the Chinese consul at the port of departure, and by him certified, to the satisfaction of the collector of the port at which such Chinese subject shall land in the United States. And no such Chinese laborer shall be permitted to enter the United States by land or sea without producing to the proper officer of the customs the return certificate herein required.".

It is contended that the production of the certificate of a right of return is sufficient to entitle the returning Chinese laborer to admission, provided such certificate is not false, and that no investigation into the conditions existing when he applies for readmission is warranted by law or treaty.    Such a construction is not warranted by the language of the treaty, is contrary to its fair intent, and would be absurdly preposterous.    The treaty first broadly excludes Chinese laborers generally.    Next it provides for certain exceptions.    The United States recognized the justice and propriety of allowing a Chinese laborer who might leave here to make a brief visit elsewhere to return if he had a wife, child, or parent living here, or $1,000 worth of property here, or a like amount of debts due him. The claim of persons so situated to especial consideration is easily appreciated.    But what sense or reason would there be in making an exception in favor of a person whose father or wife or child had once lived here, but had died, or left the country six months before, or in favor of a person who once had $1,000 of property here and $1,000 of debts due him, but who had collected the debts and removed the whole $2,000 to China long before he presented himself for admission upon his return.    The language used in the treaty is that the first article "shall not apply to the return to the United States" of any registered Chinese "laborer who has" a lawful wife, child, or parent in the United States, or property therein, or debts due him.    The plain meaning is that the first article shall not apply to the laborer who has relatives or property in the United States at the time of his

return thereto. The provisions as to making proof of the existence of the prescribed conditions before departure are for abundant caution, and do not take the place of an examination to ascertain if such conditions exist at the time of return. The secretary therefore had authority to provide for such an examination, and the decision of the appropriate immigration or customs officers made in the course of such examination is within the terms of the act of August 18, 1894, supra.

It is further contended that the judgment of the examining officers is improperly constrained by a regulation which instructs them to give the government the benefit of the doubt in doubtful cases. This, however, is practically nothing more than an instruction that the burden of proof is on the person seeking to enter, which it undoubtedly is.

There are various objections taken to the manner in which the examination is conducted—to its being conducted only in the presence of the government inspector and interpreter, to denial of counsel to represent the applicant for admission, to the prevention of communication with outsiders until the examination shall have been had. Similar objections to the administrative details of the immigration acts have been raised before many times in this court, and have been uniformly overruled. The contention that the appointment of any official other than the collector of customs who issued the certificate on departure to investigate conditions upon return is an "attempt to override and repeal the provisions of the treaty" is wholly without merit. The argument to sustain the proposition that judicial proceedings are necessary to cancel a return certificate is immaterial, since the government makes no contention that such certificate is false. It may very well be that the petitioner had $1,000 here when he left, and had not a dollar here when he returned. The only inquiry now made is as to what were the conditions at the date of return No question is made as to conditions at the date of departure.

The writ is dismissed.